UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

MARK SKOLWECK,

Plaintiff,

v.     4:12-cv-227

MAYOR and COUNCILMEMBERS OF GARDEN CITY, GEORGIA, TENNYSON HOLDER, Mayor, SCOTT GEORGE, Councilmember, JUDY SHUMAN, Councilmember, DON BETHUNE, Councilmember, BRUCE CAMPBELL, Councilmember, ROSETTA BRYANT CODY, Councilmember, BESSIE KICKLIGHTER, Councilmember, BRIAN JOHNSON, City Manager, RONALD FELDNER, Deputy City Manager, CHARLES DRAEGER, Director of Water Operations, PAM FRANKLIN, Human Resources Director,

Defendants.

## ORDER

### I. INTRODUCTION

Before the Court is Defendants' Motion to Dismiss for Failure to State a Claim. Doc. 4.

### II. BACKGROUND

Plaintiff Mark Skolweck ("Skolweck") originally filed this action in Chatham County Superior Court, claiming that Defendants retaliated against him in violation of Georgia's Whistleblower Act ("GWA") and 42 U.S.C. § 1983 for his disclosure of "abuse and waste[.]" *See* Doc. 1-6 at 3, 5-6. Skolweck sought an injunction reinstating him to the position he held with Garden City, Georgia ("City") pre-retaliation, as well as compensatory and punitive damages, and attorney's fees. *Id.* at 7-8. Defendants then removed to this Court under 28 U.S.C. § 1441(a).[1] *See* Doc. 1. That same day, Defendants filed the motion to dismiss now before the Court, asserting the defenses of (1) qualified immunity from the § 1983 claims against them in their individual capacities; and (2) failure to state a claim on counts involving both the GWA and § 1983. *See* Doc. 4.

Jurisdiction in this Court over Skolweck's § 1983 claims is proper under 28 U.S.C. § 1331 and over his related state law claims under 28 U.S.C. § 1367(a). For the following reasons, the Defendants' motion is ***GRANTED IN PART*** and ***DENIED IN PART***.

### A. Facts

Because this case is before the Court on a motion to dismiss for failure to state a claim, the Court states the facts as alleged "in the complaint, . . . accept[s] [them] as true[,] and construe[s] [them] in the light most favorable to the plaintiff[]." *Lanfear v. Home Depot, Inc.*, 679 F.3d 1267, 1271 n.4 (11th Cir. 2012).

On January 5, 2009, the City hired Skolweck as a Master Mechanic. Doc. 1-6

---

[1] Defendants' Notice of Removal erroneously states the basis of removal as § 1441(b). Doc. 1 at 3. The Notice also, however, correctly describes § 1441(a)'s basis for removability in justifying removal here. Doc. 1 at 3 ("This action is removable . . . because it is a civil action over which this Court has original jurisdiction founded on a claim allegedly arising under the laws of the United States."). The Court therefore disregards the typo.

at 2. At that time, Randall Griffin ("Griffin"), Director of the Public Works Department for the City, supervised Skolweck. *Id.* at 3. On April 11, 2011, Skolweck notified City Manager Brian Johnson ("Johnson"), Deputy City Manager Ronald Feldner ("Feldner"), and Human Resources Director Pam Franklin ("Franklin") "about the abuse and waste of City resources by Griffin." *Id.* "Amid the allegations, and during the City's investigation" into Skolweck's report, Griffin quit his job. *Id.* The City then discontinued its investigation. *Id.*

Sixteen days after Skolweck's report, Defendants Johnson, Feldner, and Franklin changed Skolweck's job title to Shop Senior Mechanic from Master Mechanic.[2] *Id.* At the same time, Johnson, Feldner, and Franklin "unilaterally and without prior notification demoted Skolweck by re-classifying his employment position from exempt to non-exempt under the Fair Labor Standards Act" ("FLSA") in violation of "the City's own policy and procedures for such re-classifications." *Id.* at 3-4. Skolweck alleges that Johnson, Feldner, and Franklin should have known the reclassification violated the City's policies. *Id.* at 4. After the demotion, Charles Draeger ("Draeger") became Skolweck's new immediate supervisor. *Id.* at 3.

Draeger proceeded to "increase[] Skolweck's job duties significantly[,]" knowing the increases "were . . . impossible to fulfill." *Id.* at 4. Draeger "consistently demanded Skolweck complete numerous tedious and menial tasks, designed to interrupt the ability of Skolweck to properly perform his job." *Id.* Finally, Draeger required Skolweck to do work that would be impossible to complete because of the City's lack of tools and resources. *Id.* Skolweck ultimately resigned on June 9, 2011. *Id.* at 5.

## III. ANALYSIS

The Court first addresses Skolweck's § 1983 claims because they implicate subject matter jurisdiction and the propriety of removal. That analysis is conducted in two parts. First, the Court evaluates the § 1983 claims against Defendants Johnson, Feldner, Franklin, and Draeger in their individual capacities. The Court then turns to the § 1983 claims against the Mayor and council members.

After addressing the § 1983 claims, the Court will examine Skolweck's state law claims. Before analysis of any of the claims, however, the Court must outline the proper standards of review.

### A. Standards of Review for Qualified Immunity and Motion to Dismiss for Failure to State a Claim

Qualified immunity shields from suit individual government officials performing discretionary functions "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *see also Randall v. Scott*, 610 F.3d 701, 714 (11th Cir. 2010). Courts conducting qualified immunity analyses must ask (1) whether a constitutional violation has occurred, and (2) whether the

---

[2] The complaint is unclear whether Griffin quit before or after the Defendants allegedly changed Skolweck's job title.

2

right violated was clearly established. *See Pearson v. Callahan*, 555 U.S. 223, 232 (2009). "[T]he district courts[,]" however, are "permitted to exercise their sound discretion in deciding which of the two prongs . . . should be addressed first in light of the circumstances in the particular case at hand." *Id.* at 236.

Courts will grant a motion to dismiss for failure to state a claim when applying the qualified immunity defense if:

> (1) from the face of the complaint, (2) [the court] . . . conclude[s] that (even if a claim is otherwise sufficiently stated), (3) the law supporting the existence of that claim—given the alleged circumstances—was not already clearly established, (4) to prohibit what the government-official defendant is alleged to have done, (5) before the defendant acted.

*Marsh v. Butler Cnty., Ala.*, 268 F.3d 1014, 1023 (11th Cir. 2001) (en banc).

And although the court must accept as true all of the factual allegations in a complaint, those allegations must be sufficient "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

The Court in *Ashcroft v. Iqbal* further explained the required level of specificity:

> A claim has facial plausibility [and thus states a claim] when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully.

556 U.S. 662, 678 (2009) (internal citation and quotation omitted); *see also Edwards v. Prime, Inc.*, 602 F.3d 1276, 1291 (11th Cir. 2010).

### B. Skolweck's § 1983 Claims Against Johnson, Feldner, Franklin, and Draeger

Skolweck asserts claims under § 1983 against Johnson, Feldner, Franklin, and Draeger for alleged retaliation in violation of Skolweck's First Amendment right to free speech. For a public employee[3] to maintain a claim of retaliation for protected speech under the First Amendment he must show that:

> (1) the employee's speech is a matter of public concern; (2) the employee's First Amendment interest in engaging in the speech outweighs the employer's interest in prohibiting the speech to promote the efficiency of public services it performs through its employees; and (3) the employee's speech played a "substantial part" in the employer's [adverse employment action].

*Anderson v. Burke Cnty., Ga.*, 239 F.3d 1216, 1219 (11th Cir. 2001) (quoting *Bryson*

---

[3] Defendants do not contest that Skolweck was a public employee. *See, e.g.* Doc. 4 at 3-5.

3

*v. City of Waycross*, 888 F.2d 1562, 1565 (11th Cir. 1989)).

Nevertheless, if no clearly established law exists to show that Skolweck spoke as a citizen on a matter of public concern, *and* that the balance of interests favors Skolweck, the Court must find that Defendants possess qualified immunity and dismiss Skolweck's § 1983 claims. *See Marsh*, 268 F.3d at 1023. The Court considers each prong of *Anderson* in turn.

*1. Matter of Public Concern*

Skolweck's complaint alleges sufficient facts to show that clearly established law supports his claim that he spoke as a citizen when he complained about a matter of public concern—Griffin's abuse and waste of City resources.

As part of the first prong of the First Amendment retaliation inquiry outlined in *Anderson*, courts must ask if "the employee spoke as a citizen on a matter of public concern." *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006) "[W]hen public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Id.* at 421. Speech made pursuant to job duties is "speech that owes its existence to a public employee's professional responsibilities." *Id.*

"Formal job descriptions do not control [that] inquiry. . . ." *Abdur-Rahman v. Walker*, 567 F.3d 1278, 1283 (11th Cir. 2009). Instead, courts should look to "the content, form, and context of a given statement," to determine whether an employee spoke as a citizen on a matter of public concern. *Connick v. Myers*, 461 U.S. 138, 147-48 (1983). At bottom, the "First Amendment invests public employees with certain rights, [but] it does not empower them to 'constitutionalize the employee grievance.'" *Garcetti*, 547 U.S. at 420 (quoting *Connick*, 461 U.S. at 154).

Here, Skolweck—a mechanic with the City government at the time of the events complained of—alleges that he notified three City officials of his supervisor's abuse and waste of City resources. *See* Doc. 1-6 at 3. Although Skolweck makes no allegations as to specific duties of his job, common sense indicates that the professional responsibilities of a mechanic very likely do not include general oversight of resource usage by government officials. Such oversight is much more likely to come from other departments, or citizens. In any event, Skolweck's allegations allow the Court to reasonably infer that he spoke as a citizen—that is, he did not speak pursuant to his duties as a mechanic. *See Iqbal*, 556 U.S. at 678; *Garcetti*, 547 U.S. at 421.

Defendants argue that Skolweck's disclosure "concerned the subject matter of Plaintiff's employment, and inferredly [sic] owed its existence to the Plaintiff's performance of his job duties." Doc. 4 at 11. That argument not only ignores the Supreme Court's admonition that subject matter is nondispositive, *see Garcetti*, 547 U.S. at 421, but also misrepresents Skolweck's speech. While Skolweck may not have known of Griffin's waste but for being a mechanic employed by the City, the actual subject matter of the statement—resource waste—indicates that Skolweck's

4

speech had nothing to do with his official responsibilities as a mechanic, either in form or substance.

Moreover, simply possessing knowledge by virtue of one's public employment does not convert speech based on that knowledge into a kind made pursuant to job duties. *See id.* (citing *Pickering*, 391 U.S. at 572 (noting that teachers are the people most likely to possess information relevant to education funding decisions and thus must "be able to speak out freely on such questions without fear of retalia[tion].")). Like the teachers in *Pickering*, whose jobs brought them close to the information they reported, Skolweck was a "member[] of a community most likely to have" information about the use of public resources by people in his department. *Pickering*, 391 U.S. at 572. Skolweck's speech owed its existence to his having the job he had—i.e., he would not have known about Griffin's waste had he worked for Starbucks—but that alone does not transform it into speech made pursuant to job duties. Also like the teachers in *Pickering*, Skolweck should be free to speak without fear of retaliation about such matters.

Lastly, abuse and waste of government resources undoubtedly are matters of public concern. Looking to the "content, form, and context" of Skolweck's speech, the Court readily determines that a government employee's waste of resources bears little resemblance to a private matter. *See Connick*, 461 U.S. at 147. Waste of government resources is of grave concern to the community. *See id.* at 146 (stating that employee expression enjoys little protection if it relates to matters of concern to the community). And Skolweck's reporting of such waste did nothing to further his own private interest. *See Morgan v. Ford*, 6 F.3d 750, 754 (noting that the relevant inquiry is "whether the purpose of [the] speech was to raise issues of public concern . . . or to further . . . private interest[s].").

Unlike the plaintiff in *Morgan*, who filed a sexual harassment claim against her supervisor and whose private interests thus stood to benefit from her own speech, Skolweck's complaint held no possibility of personal benefit; the only benefit to accrue to Skolweck would have been in his capacity as taxpayer, should his complaint have helped to eliminate waste of government resources. Such a benefit inures to all citizens and therefore does not implicate a private interest sufficient to strip Skolweck's speech of its First Amendment protections.

*Pickering*, *Connick*, *Garcetti*, *Anderson*, *Bryson*, and *Morgan* together constitute clearly established law indicating that an adverse employment action taken in response to a public employee's reporting of abuse and waste of public resources is a violation of the First Amendment actionable under § 1983. "[E]ven though the very action in question has [not] previously been held unlawful[,]" the Supreme Court *has* found that "a general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question." *Akins v. Fulton Cnty., Ga.*, 420 F.3d 1293, 1307 (11th Cir. 2005) (quoting *Hope*, 536 U.S. at 741)).

Such is the case here. *Pickering* and its progeny stand in large part for the

5

proposition that the First Amendment protects whistleblower speech by citizens. *See, e.g., Bryson*, 888 F.2d at 1566 ("[A] core concern of the first amendment is the protection of the 'whistle-blower' attempting to expose government corruption."). Skolweck reported the waste of resources by his immediate superior to City officials. *See* Doc. 1-6 at 3. The decisional law of the Eleventh Circuit and Supreme Court put Johnson, Feldner, Franklin, and Draeger on notice that demoting and harassing Skolweck because of his report constituted a violation of the First Amendment. Since clearly established law supports Skolweck's claim that he spoke as a citizen on a matter of public concern, the Court proceeds to evaluate the balancing of interests element.

### 2. Balancing of Interests

Clearly established law also supports Skolweck's claim that the balance of interests supports protecting his speech in this case. The second element of a retaliation claim requires the plaintiff to "show that his First Amendment interests, as a citizen . . . outweigh the interest of the state, as an employer." *See Anderson*, 239 F.3d at 1220; *see also Pickering v. Bd. of Educ.*, 391 U.S. 563, 568 (1968). "In performing the balancing, the [employee's speech] will not be considered in a vacuum; the manner, time, and place of the employee's expression are relevant, as is the context in which the dispute arose." *Rankin v. McPherson*, 483 U.S. 378, 388 (1987).

Some pertinent considerations include whether the speech (1) "impairs discipline by superiors"; (2) "has a detrimental impact on close working relationships for which personal loyalty and confidence are necessary"; (3) "impedes the performance of the speaker's duties"; or (4) "interferes with the regular operation of the enterprise." *Id.* (citing *Pickering*, 391 U.S. at 570-73). Such considerations "make apparent that the state interest element . . . focuses on the effective functioning of the public employer's enterprise." *Id.*

Skolweck's complaint did not negatively affect the functioning of the City's public works department. In fact, the reporting of waste likely *increases* the effective functioning of public enterprises and in any event is constitutionally protected speech as defined by clearly established law. *See, e.g., Garcetti*, 547 U.S. at 425 ("Exposing governmental . . . misconduct is a matter of considerable significance."); *Butterworth v. Smith*, 494 U.S. 624, 632 (1990) (recognizing that "publication of information relating to alleged governmental misconduct" lies "at the core of the First Amendment."); *Akins*, 420 F.3d at 1300 (noting "that the Constitution protects speech regarding governmental misconduct."); *Bryson*, 888 F.2d at 1566 ("[A] core concern of the first amendment is the protection of the 'whistle-blower' attempting to expose government corruption."). So, although the case-by-case nature of this inquiry does not always lend itself to providing government officials with notice of clearly established federal rights, *see Anderson*, 239 F.3d at 1222, "no reasonable person could believe that . . . prong[] of the test had *not* been met [here]." *Martin v. Baugh*, 141 F.3d 1417, 1420 (11th

Cir. 1998), *abrogated on other grounds by Akins*, 420 F.3d at 1306-08..

*3. Causation*

Finally, Skolweck's complaint satisfies the causation element of *Anderson* requiring the speech to be a substantial factor in bringing about the adverse employment action. *See Anderson*, 239 F.3d at 1219. "Where causation is lacking, an employee's claim of retaliat[ion] . . . must fail." *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996). Because causation is a question of fact and this case is before the Court on a motion to dismiss, Skolweck need only allege sufficient facts to allow for a facially plausible inference that his complaints about Griffin's waste were a substantial factor in causing the adverse employment actions. *See Anderson*, 239 F.3d at 1222 (noting that the causation element is a fact question); *Iqbal*, 556 U.S. at 678 (requiring facial plausibility to survive a motion to dismiss).

Skolweck alleges no direct facts[4] indicating that his speech caused the adverse employment actions. *See* Doc. 1-6 at 2-5. "[P[urely circumstantial evidence," however, "taken in the light most favorable to the plaintiff," can satisfy the burden to show causation. *Beckwith v. City of Daytona Beach Shores, Fla.*, 58 F.3d 1554, 1565 (11th Cir. 1995). Temporal proximity between speech and an adverse employment action is one such circumstance. *See Mize*, 93 F.3d at 745 ("Where [an adverse employment action] closely follows protected activity, it is usually reasonable to infer that the activity was the cause of the adverse employment decision.").

Skolweck's complaint pleads sufficient facts to reasonably infer causation because of the close temporal proximity between the original complaint about Griffin and Skolweck's job title change and FLSA re-classification. Only sixteen days elapsed between Skolweck's speech and the first alleged adverse employment action. *See* Doc. 1-6 at 3. That miniscule gap in time is alone sufficient to make out a facially plausible claim that Skolweck's speech was a substantial factor in causing the adverse employment actions. *See Bechtel Constr. Co. v. Sec'y of Labor*, 50 F.3d 926, 934 (11th Cir. 1995) (finding an inference of causation permissible when appellant terminated carpenter approximately one month after he complained about safety procedures).

Because Skolweck's complaint shows that (1) he spoke as a citizen about a matter of public concern; (2) his interest in speaking outweighs the City's interests as an employer; and (3) his speech played a substantial role in causing the adverse employments actions, the Court ***DENIES*** Defendants' Motion to Dismiss with respect to Skolweck's § 1983 claims against Defendants Johnson, Feldner, Franklin, and Draeger in their individual capacities. Counts IV and V of the complaint survive.

---

[4] Skolweck certainly alleges a causal connection between his speech and demotion. *See* Doc. 1-6 at 6 (alleging Defendants took "retaliatory measures against Plaintiff for voicing his concern about the abuse and waste of public resources by . . . Griffin."). But such allegations are legal conclusions and the Court is accordingly not bound to accept them as true when evaluating the motion to dismiss. *See Twombly*, 550 U.S. at 555.

### C. Skolweck's § 1983 Claims Against the Mayor and Council Members

Skolweck attempts to plead claims against the Defendants under § 1983 for "deliberate intent to harm through the reliance on official policies and/or customs of depriving . . . public employees, of the right to free speech." Doc. 1-6 at 6. Skolweck makes no attempt to identify those policies and customs. He merely alleges legal conclusions regarding the Defendants' actions pursuant to them. *See* Doc. 1-6 at 6. Nowhere can the Court find factual allegations sufficient to raise the right to relief above a speculative level for claims based on policy or custom. *See Twombly*, 550 U.S. at 555.

Accordingly, the Court *DISMISSES* all claims against all Defendants—whether in their individual or official capacities—based on City policies and customs. Also, because Skolweck pleads no facts regarding the Mayor and council members relevant to § 1983 claims against those parties in their individual capacities, any and all such claims are *DISMISSED*.

### D. Skolweck's Claims Under the GWA

Skolweck also asserts claims against the City and individual defendants under O.C.G.A. § 45-1-4, the GWA. Doc. 1-6 at 5. Section 45-1-4(b) permits public employers to "receive and investigate complaints" from public employees "concerning the possible existence of any activity constituting fraud, waste, and abuse in or relating to any state programs and operations." Section 45-1-4(d)(2) states that:

> No public employer shall retaliate against a public employee for disclosing a violation of or noncompliance with a law, rule, or regulation to either a supervisor or government agency, unless the disclosure was made with knowledge that the disclosure was false or with reckless disregard for its truth or falsity.

To establish a case of retaliation under §45-1-4(d)(2) sufficient to survive a motion to dismiss, a public employee must allege facts showing that (1) the employer falls under the definition of "public employer"; (2) the public employee disclosed a "violation of or noncompliance with a law, rule, or regulation" to a supervisor; (3) the employee then suffered some adverse employment action taken by the public employer; and (4) there is a causal relationship between (2) and (3). *See Forrester v. Ga. Dep't of Human Servs.*, 308 Ga. App. 716, 722 (2011).

Three months ago, the Georgia Court of Appeals considered the interaction between §§ 45-1-4(b) and (d). That court found:

> subsection (b) of the statute acts as a limit on whistle-blower protection provided under the statute, and that, where the complaint about fraud, waste, and abuse is made to a public employer defined under OCGA § 45-1-4(a)(4) as a state-funded local governmental entity, whistle-blower protection is limited to a complaint related to a state-funded program or operation under the jurisdiction of the public employer.

8

*Fulton Cnty. v. Colon*, 730 S.E.2d 599, 602 (Ga. Ct. App. 2012).[5]

After *Colon*, plaintiffs seeking to recover under § 45-1-4 must plead facts sufficient to allow a reasonable inference that the fraud or waste at issue involved a state-funded program. *Id.* at 604. The program, however, "need not be of state origin." *Id.* Rather, it "must be funded at least in part by the state." *Id.*

Skolweck asserts claims under the GWA against Defendants in their individual capacities, and against the City. *See* Doc. 1-6 at 5 (Count I of the complaint). Skolweck also requests punitive damages against Defendants as individuals.[6] *Id.* at 5-6 (Count II). Finally, pursuant to § 45-1-4(f), Skolweck requests attorney's fees should he prevail on his GWA claims. *Id.* at 6 (Count III).

As with Skolweck's § 1983 claims, the Court first addresses Counts I-III as to Defendants Johnson, Franklin, Feldner, and Draeger. Second, the Court addresses the same counts as to the Mayor and council members.

*1. Counts I-III Against Johnson, Franklin, Feldner, and Draeger in Their Individual Capacities*

Skolweck fails to allege that Griffin's waste and abuse of county resources "related to a state-funded program" sufficient to survive a motion to dismiss. *See Colon*, 730 S.E.2d at 602. Both here and in *Colon*, the plaintiffs disclosed abuse and waste of county resources to higher ups. *Id.* at 600; Doc. 1-6 at 3. And in both cases, the plaintiffs suffered adverse employment actions. *Colon*, 730 S.E.2d at 600-01 (noting Colon's demotion after his disclosure of abuse and waste of county funds); Doc. 1-6 at 3-4 (detailing Skolweck's demotion and harassment after his disclosure of abuse and waste of City resources). Both Skolweck and Colon also failed to allege that the abuse and waste they complained of related to a "program funded at least in part by the state." *Colon*, 730 S.E.2d at 604; *see* Doc. 1-6 (alleging only that Griffin committed "abuse and waste of City resources."). Skolweck therefore fails to state a claim under the GWA.

The Court, however, opts not to immediately dismiss Skolweck's GWA claims. Although the Court need not *sua sponte* grant a plaintiff leave to amend "when the plaintiff, who is represented by counsel, never filed a motion to amend nor requested leave to amend," *see Wagner v. Daewoo Heavy Indus. Am. Corp.*, 314 F.3d 541, 542 (11th Cir. 2002), the Court, in the

---
[5] *Colon* is an unreported decision. Plaintiffs correctly point out that Georgia Court of Appeals Rule 33(b) states that "[a]n unreported opinion is neither a physical nor binding precedent." Although not bound to follow *Colon*, the Court finds *Colon's* interpretation of § 45-1-4 persuasive. Because *Colon* and this case share factual similarities and because the requirements for stating a claim under the GWA are a matter of state law, the Court declines to substitute its judgment in place of the Georgia Court of Appeals'.

[6] To the extent that Skolweck requests punitive damages against the City, that request is denied. "[A]n award of punitive damages against a governmental entity is against public policy and is thus impermissible as a matter of law." *Groves v. City of Atlanta*, 213 Ga. App. 455, 458 (1994); *see also City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981) ("[A] municipality is immune from punitive damages under 42 U.S. C. § 1983."); *Bunyon v. Burke Cnty.*, 306 F. Supp. 2d 1240, 1264 (S.D. Ga. 2004) (same).

interest of justice, chooses to do so here. *See* FED. R. CIV. P. 15(a)(2).

Skolweck has yet to amend his complaint even once. And the Georgia Court of Appeals only decided *Colon*—the authority establishing the pleading requirement for GWA claims Skolweck fails to satisfy—on July 13, 2012, barely three weeks before the initial filing of the complaint in this case. *Colon*, moreover, is not binding precedent on the Georgia courts, much less this court. To penalize Skolweck and his counsel for failing to properly predict this Court's decision to follow *Colon* would be inappropriate under the circumstances. Accordingly, the Court ***GRANTS*** Skolweck leave to amend his complaint as to Counts I-III against Defendants Johnson, Feldner, Franklin, and Draeger. Skolweck's amended complaint must be filed with the Court within fourteen (14) days of the entry of this order.

Because the Court grants Skolweck leave to amend, it does not address Defendants' argument that § 45-1-4 does not permit claims against defendants in their individual capacities. *See* Doc. 4 at 3. Defendants are free to raise that issue again after Skolweck amends his complaint.

### 2. *Counts I-III Against the Mayor and Council Members in Their Individual Capacities*

Skolweck also appears to assert claims under the GWA against the Mayor and council members in their individual capacities. *See* Doc. 1-6 at 5-6. As with his § 1983 claims against those Defendants, Skolweck's allegations fail to state a claim under the GWA.

Skolweck alleges that "the City, by and through Defendant[s]" Johnson, Feldner, and Franklin changed Skolweck's job title and reclassified Skolweck's position under the FLSA. *See id.* at 3. He also alleges that the City "ratified the actions of" Johnson, Franklin, Feldner, and Draeger. *Id.* at 4. Nowhere does Skolweck allege any facts relating to the Mayor and council members in their individual capacities. The only factual allegations Skolweck makes relating to the Mayor and council members appear to be against them in their official capacities, in which case the claims are better characterized as against the City. *See Hafer v. Melo*, 502 U.S. 21, 25 (1991) ("Suits against state officials in their official capacity . . . should be treated as suits against the State."). Counts I-III against the Mayor and council members of the City in their individual capacities are therefore ***DISMISSED***.

### IV. CONCLUSION

Skolweck alleges sufficient facts to make out a First Amendment retaliation claim under 42 U.S.C. § 1983 only against Defendants Johnson, Feldner, Franklin, and Draeger in their individual capacities. The Court therefore ***DENIES*** Defendants' Motion to Dismiss for Failure to State a Claim with respect to those four Defendants and claims, and ***DENIES*** their defense of qualified immunity.

The Court ***GRANTS*** Defendants' Motion to Dismiss Skolweck's § 1983 claims as to the Mayor and council members in their individual capacities and therefore ***DISMISSES*** those claims. The Court also

*DISMISSES* Skolweck's § 1983 claims against the City.

As to his GWA claims against Johnson, Feldner, Franklin, and Draeger, Skolweck fails to plead an essential element of a claim. But, because the interests of justice so require, *see* FED. R. CIV. P. 15(a)(2), the Court *GRANTS* Skolweck leave to amend his complaint on Counts I-III against those four defendants in their individual capacities. Skolweck has until November 3, 2012—the deadline for motions to amend contained in the Scheduling Order—to amend his complaint. *See* Doc. 15. If Skolweck fails to amend his complaint within that timeframe, the Court will dismiss his GWA claims against all Defendants and the City.

Skolweck, however, fails to allege any facts supporting his GWA claims against the Mayor and council members in their individual capacities. Accordingly, the Court *DISMISSES* all GWA claims against the Mayor and council members in their individual capacities.

The claims and parties remaining are as follows: (1) Skolweck's § 1983 claims against Defendants Johnson, Feldner, Franklin, and Draeger in their individual capacities; and (2) Skolweck's GWA claims, should he choose to amend his complaint.

Lastly, the Court *LIFTS* the stay of discovery it granted on October 5, 2012. Doc. 12.

This 12 day of October 2012.

/s/ B. Avant Edenfield

B. AVANT EDENFIELD, JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

11